IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

ELECTRONICALLY FILED
Dec 21 2023
U.S. DISTRICT COURT
Northern District of WV

DIANA MEY

    Plaintiff,

v.

    Civil Action No. **5:23-cv-367 (Bailey)**

DIRECTV, LLC

    Defendant.

## COMPLAINT

Plaintiff Diana Mey ("Plaintiff") states as follows for her Complaint against Defendant DirecTV, LLC ("Defendant"):

### PRELIMINARY STATEMENT

1.    Plaintiff brings this lawsuit under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. Plaintiff also brings this lawsuit under the West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-6F-501 and 601, a state statute prohibiting abusive, unfair, and deceptive telemarketing practices.

### PARTIES AND JURISDICTION

2.    Plaintiff Diana Mey is an individual residing in Wheeling, West Virginia.

3.   Defendant DirecTV is a California limited liability company with a principal place of business in California, and is registered to do business in West Virginia.

4.   At all relevant times, Defendant conducted business in West Virginia, solicited business in West Virginia, engaged in persistent course of conduct in West Virginia, and/or has derived substantial revenue from products and services sold in West Virginia.

5.   Because several of Plaintiff's claims arise under federal law, this Court has subject-matter jurisdiction under 28 U.S.C. § 1331. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 as to the remaining state law claims.

6.   Because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, venue is proper under 28 U.S.C. § 1391(b)(2). In particular, the telemarketing calls to Plaintiff were received in this district.

## OPERATIVE FACTS

7.   DirecTV is digital satellite service provider that sells its products and services across the country, including in West Virginia.

8.   Upon information and belief, DirecTV authorized its agents to make unsolicited telemarketing calls on DirecTV's behalf and to market DirecTV's products and services.

9. Mey's cellular telephone numbers were (304)-242-XXXX, 304-281-XXXX, 304-280-XXXX—all of which she registered on the National Do Not Call Registry (the "DNC Registry"). At all relevant times, Mey's numbers were listed on the DNC Registry and used for residential purposes.

10. However, despite being listed on the DNC Registry, DirecTV, directly or through one or more intermediaries, initiated telephone calls to Mey to induce the sale of DirecTV's products and services.

11. On August 3, 2017, Mey received a call from 800-217-8203 to her number at (304)-242-XXXX. Because Mey did not answer this call, it was routed to her answering machine which recorded the prerecorded message that was played, offering TV programming services and equipment.

12. On August 12, 2017, Mey received a call from 304-440-3993 to her number at (304)-242-XXXX. The caller "spoofed" this call by transmitting phony caller identification information to disguise the true source of the call. When Mey answered, the caller began reading a scripted pitch for DirecTV products and services. When Mey asked why the caller identification presented a West Virginia area code, the caller claimed that the number was programmed into "the dialer."

13. On August 17, 2017, Mey received a call from 800-217-8203 to her number at (304)-242-XXXX. When Mey answered, a prerecorded message was played, offering TV programming services and equipment. It was the same prerecorded message from the August 3, 2017 call. Mey pressed dial key "1" to speak with a live

agent who identified himself as "Sam Davis" with "Special Deals for DirecTV" in Las Vegas. Mey terminated the call after Davis requested her social security information.

14.     On December 11, 2017, Mey received a call from 800-217-8203 to her number at (304)-242-XXXX. When Mey answered, a prerecorded message was played, offering TV programming services and equipment. It was the same prerecorded message received on August 3 and 17.  The call ended due to a poor connection.

15.     On December 13, 2017 at 1:35 p.m., Mey received a call from 800-217-8203 to her number at (304)-242-XXXX. When Mey answered, a prerecorded message was played, offering TV programming services and equipment. It was the same prerecorded message as played during the 2 calls in August and the call received on December 11, 2017. After pressing "1" to speak to a live agent, the call abruptly disconnected.

16.     On December 13, 2017 at 4:29 p.m., Mey received a call from 800-217-8203 to her number at (304)-242-XXXX. When Mey answered, a prerecorded message was played, offering TV programming services and equipment. It was the same prerecorded message as played during the 2 calls in August, the call received on December 11, 2017 and a call earlier this same day. After pressing "1," Mey was transferred to a live agent who represented that he was with DirecTV.

17.     On January 24, 2018 at 3:47 p.m. and 5:54 p.m., Mey received two calls from 800-217-8203 to her number at (304)-242-XXXX. When Mey answered those calls, prerecorded messages were played, offering TV programming services and

equipment. They were the same prerecorded messages from earlier phone calls pitching DirecTV's services.

18. On February 9, 2018, Mey received a call from 800-217-8203 to her number at (304)-242-XXXX. When Mey answered the call, the same prerecorded message as earlier phone calls pitching DirecTV's services was played. Mey pressed "1" to speak with a live agent. When she was transferred, Mey made a do-not-call request. The caller hung up.

19. On February 12, 2018, Mey received a call from 304-183-0602 to her number at (304)-242-XXXX. The caller "spoofed" this call by transmitting phony caller identification information to disguise the true source of the call. Mey did not answer, so the caller was forwarded to her answering machine which recorded a female with a message similar to earlier calls.

20. On February 26, 2018, Mey received a call from 304-242-2163 to her number at (304)-242-XXXX. The caller "spoofed" this call by transmitting phony caller identification information to disguise the true source of the call. When Mey answered the call, the same prerecorded message as previous calls was played. Mey pressed "1" to speak with a live agent. Mey spoke to a live agent who represented himself to be with DirecTV. To identify the source of the call, Mey allowed the agent to charge her credit card. As a result, Mey's card was charged twice by DirecTV. Before disconnecting the call, Mey cancelled the purchase and made a do-not-call request. A day later, Mey received another credit card charge from DirecTV.

21. On February 27, 2018, Mey received a call from a blocked caller ID to her number at (304)-242-XXXX. The caller blocked this call to disguise the true source of the call. The caller represented to be with DirecTV's confirmation department but then disconnected the call when she realized she had reached Mey's answering machine voicemail.

22. At 1:53 p.m. later that day, Mey received a call from 484-821-4090 to her number at (304)-242-XXXX. The caller asked for Mey's 4-digit passcode to her AT&T account. The caller represented to be with AT&T in Bridgewater, NJ. Mey reiterated that she had cancelled her DirecTV account and asked the representative to confirm that cancellation before hanging up.

23. At 3:03 p.m. that day, Mey received a call from 855-469-9333 to her number at (304)-242-XXXX. This time it was a prerecorded message from Viasat Internet, advising Mey of a scheduled installation. Mey was eventually transferred to a live agent who represented that her DirecTV account was still active. Before hanging up, Mey again requested that her account be cancelled. In spite of this, Mey received a letter from DirecTV thanking her for her order.

24. From March 6, 2018 to December 6, 2018, Mey received at least another twenty-four calls, each soliciting DirecTV services. A majority of these calls began by playing prerecorded messages. Of those calls, at least eight were placed to another of Mey's phone numbers, 304-281-XXX, and at least eight were placed to Mey's number at 304-280-XXXX.

25. From January 11, 2019 to December 20, 2019, Mey received at least another thirty-four calls, each soliciting DirecTV services. Numerous of the calls spoofed their caller identification to suggest that they originated from within West Virginia, and numerous of the calls began by playing a prerecorded message.

26. From January 15, 2020 to December 31, 2020, Mey received at least another thirty-four calls, each soliciting DirecTV services. Numerous of the calls spoofed their caller identification to suggest that they originated from within West Virginia, and numerous of the calls began by playing a prerecorded message.

27. From January 7, 2021 to June 23, 2021, Mey received at least another eight calls, each soliciting DirecTV services. Several of the calls spoofed their caller identification to suggest that they originated from within West Virginia, and several of the calls began by playing a prerecorded message.

28. Mey did not consent to receive any of the alleged calls.

29. In December 2017, Mey filed a putative class action against DirecTV and others for violations of the TCPA. *See Mey, et al. v. DirectTV, LLC, et al.*, No. 5:17-cv-179 (N.D.W.Va.). DirecTV thereafter moved to compel arbitration. In August 2020, the Circuit Court of Appeals for the Fourth Circuit vacated the district court's order denying the motion to compel arbitration and remanding the case for the sole purpose of compelling arbitration.

30. Following the District Court's order compelling arbitration, Ms. Mey obtained a "Notice of Dispute" form from DirecTV's website, completed it consistently

with DirecTV's instructions, and submitted it via certified mail on or around September 30, 2022.

31. On December 6, 2022, Ms. Mey's counsel received an email from DirecTV's attorney, claiming that Ms. Mey's Notice of Dispute was invalid because it was not signed by the "account holder" and was not accompanied by a "complete account authorization form."

32. On January 26, 2023, Ms. Mey's counsel responded that because the Notice of Dispute obtained by Ms. Mey directly from DirecTV did not require an account holder's signature or a "complete account authorization form," Ms. Mey had met the requirements of her arbitration agreement with DirecTV. Further, because the contractual 60-day period for dispute resolution had passed, Ms. Mey's counsel contended, she was prepared to commence arbitration proceedings immediately.

33. Since that time, Ms. Mey has repeatedly asked DirecTV to honor its arbitration agreement and commence arbitration proceedings, but DirecTV has refused to do so.

34. By refusing to comply with the terms of its arbitration agreement, DirecTV has waived its right to compel arbitration of Ms. Mey's claims.

## COUNT I
## Violations of the TCPA, 47 U.S.C. § 227(b)

35. Mey incorporates the allegations from all previous paragraphs as if fully set forth herein.

36. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii) and (b)(1)(B).

37. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

38. Under the TCPA, a person or entity can be liable for calls made on its behalf, even if the person or entity does not directly place the calls. 47 U.S.C. § 227(c)(5).

39. As explained by the FCC, the agency charged with interpreting and enforcing the TCPA, the applicable rules "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Red. 12391, 12397 ¶ 13 (1995).

40. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Mey using prerecorded messages.

41. Defendant's violations were negligent, willful, and knowing.

## COUNT II
### Violations of the TCPA, 47 U.S.C. § 227(c)

42. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

43. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf made telemarketing calls to Plaintiff's residential telephone, which was listed on do-not-call registry, in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2).

44. Plaintiff received more than one telephone call within a 12-month period by or on behalf of Defendant in violation of the TCPA.

45. Defendant's violations were negligent, willful, and knowing.

## COUNT III
### Violations of the WVCCPA, W. Va. Code §§ 46A-6F-501 and 601

46. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

47. The WVCCPA proscribes unfair and deceptive acts and practices by telemarketers. *See* W. Va. Code § 46A-6F-501. Contrary to that prohibition, Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf made telemarketing calls to Plaintiff that (1) caused confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services; (2) caused confusion or misunderstanding as to affiliation, connection or

association with or certification by another; (3) used deceptive representations or designations of geographic origin in connection with goods or services; and (4) engaged in transmission of misleading or inaccurate caller identification information, including, but not limited to, circumventing caller identification technology that allows the consumer to identify from what phone number or organization the call has originated from, or to otherwise misrepresent the origin and nature of the solicitation.

48. The WVCCPA proscribes certain abusive telemarketing acts and practices. *See* W. Va. Code § 46A-6F-601. Contrary to that prohibition, Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf made telemarketing calls to Plaintiff that (1) threated, intimidated, or used profane or obscene language; (2) enraged repeatedly and continuously with behavior a reasonable person would deem to be annoying, abusive or harassing; (3) were made despite previous requests to stop calling; and (4) engaged in other conduct which would be considered abusive to any reasonable consumer.

49. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the WVCCPA.

50. Defendant's violations were negligent, willful, and knowing.

WHEREFORE, Plaintiff prays for the following individual relief (1) judgment awarding any other injunctive relief necessary to ensure Defendant's compliance with the TCPA and WVCCPA; (2) judgment awarding Plaintiff statutory damages of $500 for each negligent violation of the TCPA and $1,500 for each knowing violation; (3)

judgment awarding Plaintiff statutory damages for each violation of the WVCCPA; and (4) judgment awarding Plaintiff reasonable attorneys' fees and costs and such other relief as is just and equitable under the circumstances.

JURY TRIAL DEMANDED

**DIANA MEY**

By Counsel:

/s/ Andrew C. Robey
Ryan M. Donovan (WVSB #11660)
Andrew C. Robey (WVSB #12806)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
t: 681-265-3802
f: 304-982-8056
rdonovan@hfdrlaw.com
arobey@hfdrlaw.com